IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WEEKS MARINE, INC., § 
 § 
 Plaintiff, § 
 § 
v. § CIVIL ACTION NO. H-16-3642
 § 
UNITED STATES OF AMERICA, § 
 § 
 Defendant. § 

## MEMORANDUM OPINION AND ORDER

Pending before the court are Plaintiff Weeks Marine, Inc.'s ("Weeks Marine") Motion for Summary Judgment ("Plaintiff's MSJ") (Docket Entry No. 19) and defendant The United States of America's ("United States") Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 20). For the reasons stated below, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.

### I. Background

Weeks Marine and the United States were co-defendants in <u>Contango Operators, Inc. v. United States of America and Weeks Marine, Inc.</u>, 9 F. Supp. 3d 735 (S.D. Tex. 2014), <u>aff'd</u>, 613 F. App'x 281 (5th Cir. 2015) (the "Underlying Litigation"). That action forms the basis for the pending motions for summary judgment. Contango Operators, Inc. ("Contango") filed an

application for a permit to construct a natural gas pipeline in the Gulf of Mexico with the Regulatory Division of the United States Army Corps of Engineers ("the Corps"). The Corps granted Contango a permit to construct a pipeline across the "Atchafalaya Pass Channel" in November of 2007. Information concerning the proposed placement of the Contango pipeline across the Atchafalaya Pass Channel was not forwarded by the Regulatory Division of the Corps to the Waterways Division of the Corps. The Waterways Division provides the locations of submarine pipelines to the engineers who prepare dredging contracts for Corps-maintained channels.

After completing the pipeline in April of 2008 Contango provided as-built drawings that illustrated the intersection of the pipeline and the Atchafalaya Pass Channel to the Minerals Management Service ("MMS"), the National Ocean Service ("NOS"), and the United States Coast Guard (the "Coast Guard"). No division within the Corps received the as-built drawings. In April of 2009 the Corps solicited bids on a contract to dredge the Atchafalaya Pass Channel. Corps engineers prepared project specifications that were provided to the bidders and that would ultimately become part of the dredging contract. Five submarine pipelines located in or near the Atchafalaya Pass Channel were identified in the specifications; the Contango pipeline, however, was not listed. Weeks Marine was awarded the contract in August of 2009. The Contango pipeline was not identified in the dredging contract.

The National Oceanic and Atmospheric Administration ("NOAA") is the federal agency tasked with the publication of nautical charts. Before November 25, 2009, the relevant NOAA charts – Electronic Navigational Chart ("ENC") US4LA21E and Raster Navigational Chart ("RNC") 11351 – displayed the Atchafalaya Pass Channel without the Contango pipeline. After receiving information from MMS about a new pipeline across the Atchafalaya Pass Channel, NOAA published on its website updated ENC and RNC charts on December 3, 2009. Both the updated ENC and the updated RNC (collectively, the "updated NOAA charts") depicted the Contango pipeline. On December 2, 2009, the Coast Guard published a Local Notice to Mariners ("LNM") announcing the addition of a submarine pipeline to the area displayed in the RNC. The updated NOAA charts and the LNM were published after Weeks Marine had been awarded the contract and had commenced dredging.

On February 24, 2010, Weeks Marine's non-self-propelled dredging barge, the G.D. MORGAN, struck the Contango pipeline, causing the pipeline to rupture and Contango to incur losses. Contango then sued Weeks Marine and the United States.

During the Underlying Litigation Weeks Marine filed a cross-claim against the United States alleging that Contango's damages were caused by the negligence of the Corps. The court held that Weeks Marine's cross-claim was essentially contractual and that the court did not have jurisdiction to adjudicate the claim because

Weeks Marine had not complied with the Contract Disputes Act ("CDA").[1] The CDA required Weeks Marine to first submit its contract claim against the United States to the Contracting Officer for a decision. 41 U.S.C. § 7103(a)(1).

After a bench trial the court held, and the Fifth Circuit affirmed, that both defendants were liable to Contango because of separate acts of negligence. The court held that Weeks Marine was liable for 40% of Contango's damages and the United States was liable for 60%.[2] The total award to Contango, paid in full by Weeks Marine, was $13,919,366.36. After the Fifth Circuit affirmed the court's Final Judgment Weeks Marine filed an Unopposed Motion for Judgment for Contribution.[3] The court granted the motion and ordered the United States to pay Weeks Marine $8,018,468.81.[4]

---

[1] Memorandum Opinion and Order, Contango Operators, Inc., et al. v. United States and Weeks Marine, Inc., Civil Action No. 4:11-00532 (S.D. Tex. 2014), Docket Entry No. 34, pp. 4-11.

[2] Memorandum Opinion and Order, Contango Operators, Inc., et al. v. United States and Weeks Marine, Inc., Civil Action No. 4:11-00532 (S.D. Tex. 2014), Docket Entry No. 180, pp. 36-38.

[3] See Defendant Weeks Marine, Inc.'s Unopposed Motion for Judgment for Contribution, Contango Operators, Inc., et al. v. United States and Weeks Marine, Inc., Civil Action No. 4:11-00532 (S.D. Tex. 2014), Docket Entry No. 196.

[4] See Judgment for Contribution, Contango Operators, Inc., et al. v. United States and Weeks Marine, Inc., Civil Action No. 4:11-00532 (S.D. Tex. 2014), Docket Entry No. 197.

After paying its share of the judgment,[5] Weeks Marine filed a Certified Claim against the Corps for $5,900,897.55.[6] The Contracting Officer denied the claim,[7] and Weeks Marine filed this action seeking indemnity against the United States.[8] The parties then filed the pending cross-motions for summary judgment[9] and responses in opposition.[10]

## II. Summary Judgment Standard

---

[5]Plaintiff Weeks Marine, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Memorandum in Support of MSJ"), attached to Plaintiff's MSJ, Docket Entry No. 19-1, p. 14.

[6]See Weeks Marine, Inc.'s Certified Claim Against the United States Army Corps of Engineers, Exhibit B to Defendant's MSJ, Docket Entry No. 20-4, p. 12.

[7]See Contracting Officer's Final Decision, Exhibit 8 to Plaintiff's MSJ, Docket Entry No. 19-11, p. 7.

[8]See Plaintiff's Verified Original Complaint, Docket Entry No. 1. After a contractor's claim is denied by the Contracting Officer, the contractor may bring a claim arising out of a maritime contract in a district court. 41 U.S.C. § 7102(d); see Bethlehem Steel Corp. v. Avondale Shipyards, Inc., 951 F.2d 92, 94 (5th Cir. 1992) (describing Section 7102 (former Section 603) as "rather than completely excluding maritime contracts from the Contract Disputes Act, simply vests appeals from the administrative determination of claims in the district courts, rather than in the Court of Claims or the Court of Appeals for the Federal Circuit").

[9]See Plaintiff's MSJ, Docket Entry No. 19; Defendant's MSJ, Docket Entry No. 20.

[10]See The United States' Response to Weeks Marine's Motion for Summary Judgment, Docket Entry No. 21; Plaintiff Weeks Marine, Inc.'s Memorandum of Law in Opposition to the United States of America's Motion for Summary Judgment, Docket Entry No. 22.

Summary judgment is warranted if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An examination of substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under the governing law." Id. A genuine issue as to a material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor. Id. at 2511.

Where, as here, both parties have moved for summary judgment, both "motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004). The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986); see also Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If a defendant moves for summary judgment on the basis of an affirmative defense, "it must establish beyond dispute all of the defense's essential elements." Bank of Louisiana v. Aetna U.S.

Healthcare Inc., 468 F.3d 237, 241 (5th Cir. 2006). A defendant may also meet its initial burden by pointing out that the plaintiff has failed to make a showing adequate to establish the existence of an issue of material fact as to an essential element of plaintiff's case. Celotex Corp., 106 S. Ct. at 2552. If the movant satisfies its initial burden, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other evidence that summary judgment is not warranted because genuine fact issues exist. Celotex Corp., 106 S. Ct. at 2552.

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). But conclusory claims, unsubstantiated assertions, or insufficient evidence will not satisfy the nonmovant's burden. Wallace, 80 F.3d at 1047. If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate. Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992).

To prevail on its Motion for Summary Judgment Weeks Marine must establish as a matter of law that the United States is liable to it for the damages Weeks Marine paid to Contango. See Fed. R. Civ. P. 56(a). The United States may prevail on its motion by

showing that there is an absence of evidence to support liability. See Celotex, 106 S. Ct. at 2664.

### III. Analysis

#### A. Weeks Marine's Motion for Summary Judgment

In its Motion for Summary Judgment Weeks Marine argues that the United States is liable to Weeks Marine for $5,900,897.55, the amount it paid to satisfy Contango's judgment.[11] Weeks Marine argues that the collateral estoppel effect of the court's finding in the Underlying Litigation makes the United States liable to Weeks Marine for breach of contract and negligence.[12] Although in its response to the United States' Motion for Summary Judgment Weeks Marine states that "[it] is not making a claim for contractual indemnification,"[13] however its claim is characterized, the different terminology amounts to the same claim -- Weeks Marine seeks to be reimbursed by the United States for the $5,900,897.55 it paid to Contango because of its own negligence.

   1. Weeks Marine Is Not Entitled to Summary Judgment on Its Negligence Claim

---

[11]See Plaintiff's Memorandum in Support of MSJ, attachment 1 to Plaintiff's MSJ, Docket Entry No. 19-1, p. 14.

[12]Id. at 10-12.

[13]Plaintiff Weeks Marine, Inc.'s Memorandum of Law in Opposition to the United States of America's Motion for Summary Judgment, Docket Entry No. 22, p. 1.

The court previously held that Weeks Marine's cross-claim against the United States arose out of a contractual relationship between Weeks Marine and the Corps.[14]

> Any claim that the USA was negligent for failing to inform Weeks Marine about the pipeline is essentially contractual. If the USA breached a duty by failing to include information in the contract, such a duty would be based in the contractual relationship, and a breach would have occurred by a failure to include the information in the contract. Any claim that the USA was negligent for failing to inform Weeks Marine about the pipeline after the contract was signed similarly would involve a duty based in the contract -- even if other duties might be implicated as well -- and a breach consisting of a failure to supply information that should have been included in the contract.
>
> Any claim that the USA was negligent in the information provided in its solicitation for bids is essentially contractual. The solicitation for bids was a solicitation to enter into a contract. As the court in A & S Council held, the fact that such alleged conduct occurred before the contract was entered into does not alone make the claim noncontractual. 56 F.3d at 240-41. Any claim that the USA was negligent in the NOAA navigational charts that the USA provided to Weeks Marine is also essentially contractual. These charts were provided to Weeks Marine so that Weeks Marine could carry out the promises it made to the USA in the contract.
>
> . . .
>
> Weeks Marine's negligence claim against the government [] involves issues of contract interpretation -- the question of whether the USA had an obligation to inform Weeks Marine of the pipeline (a) in the contract, (b) in the solicitation for bids for the contract, or (c) in any charts given to Weeks Marine so that it could perform under the contract, and the question of whether the USA failed to fulfill any of those obligations. On

---

[14]Memorandum Opinion and Order, Contango Operators, Inc., et al. v. United States and Weeks Marine, Inc., Civil Action No. 4:11-00532 (S.D. Tex. 2014), Docket Entry No. 34, pp. 4-7.

these facts, arguing that the USA was negligent in not informing Weeks Marine about the location of the pipeline is inextricably bound up in arguing that the USA breached a contractual duty to inform Weeks Marine about the pipeline.[15]

The CDA establishes a method for resolution of "each claim by a contractor against the Federal Government relating to a contract." 41 U.S.C. § 7103(a)(1). Therefore, "[w]hen the [CDA] applies, it provides the exclusive mechanism for dispute resolution . . . ." Trader Properties, LLC v. United States, Civil Action No. G-14-254, 2015 WL 1208983, at *2 (S.D. Tex. March 16, 2015) (quoting Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995)). "In order to determine whether the CDA applies, federal courts generally look to whether the dispute at issue is one of contract . . . Effective enforcement of the jurisdictional limits of the CDA mandates that courts recognize contract actions that are dressed in tort clothing." United States v. J&E Salvage Co., 55 F.3d 985, 987-88 (4th Cir. 1995). Weeks Marine has a claim for breach of contract under the CDA, it does not have a negligence claim. Weeks Marine is therefore not entitled to summary judgment on its negligence claim.

2. <u>Weeks Marine Is Not Entitled to Summary Judgment on Its Breach of Contract Claim</u>

---

[15]Memorandum Opinion and Order, Contango Operators, Inc., et al. v. United States and Weeks Marine, Inc., Civil Action No. 4:11-00532 (S.D. Tex. 2014), Docket Entry No. 34, pp. 8-11.

Weeks Marine argues that it is entitled to contractual indemnity under the analysis of <u>Michigan Wisconsin Pipeline Co. v. Williams-McWilliams Co.</u>, 551 F.2d 945 (5th Cir. 1977). In the Underlying Litigation the court explained in detail why this argument had no merit. The court began its analysis with a detailed discussion of the opinion.

> Two Fifth Circuit decisions involving damages to pipelines are instructive in identifying the duties of defendants in this case. <u>Michigan Wisconsin Pipeline v. Williams-McWilliams</u>, 551 F.2d 945 (5th Cir. 1977), involved an allision between a dredge and a pipeline. The pipeline had been constructed pursuant to a permit from the Corps of Engineers, but the specifications attached to the dredger's government contract did not show the pipeline crossing the area to be dredged. 551 F.2d at 948. The contract also contained two "site inspection clauses" in which the dredger agreed to take steps "reasonably necessary to ascertain the nature and location of the work and the general and local conditions which can affect the work and the cost thereof" and to "acknowledge that he ha[d] investigated and satisfied himself as to the conditions affecting the work." <u>Id.</u> at 949 (internal quotation marks omitted). After the accident the pipeline owner sued the dredger for damages. <u>Id.</u> at 947. The dredger filed a third-party complaint, arguing that the United States was at fault for providing specifications that failed to show the pipeline. <u>Id.</u> at 947.
>
> The district court in <u>Michigan Wisconsin</u> found in favor of the pipeline owner and against the dredger, and dismissed the dredger's third-party complaint. <u>Id.</u> Affirming the judgment against the dredger and reversing the dismissal of the complaint against the United States, the Fifth Circuit held the United States may be held liable where it has "by a prolonged course of conduct [led] a contractor to expect that when certain kinds of material structures are present in an area in which a contract is to be performed that the structures will be shown on the specifications drawings." <u>Id.</u> at 951. The court held that "the absence of a depiction" of a pipeline amounted to a "positive assertion" or

"representation" on which a dredger-contractor was entitled to rely, "given a prolonged course of conduct justifying contractor reliance on the [United States] providing this information one way or the other in specifications drawings." Id. (internal quotation marks omitted). The court concluded that the Corps' regular practice of depicting pipelines on the specifications attached to dredging contracts amounted to such a course of conduct. Id. at 952-53. Moreover, the court held that "government contractors . . . are not obligated to make an independent investigation" into the accuracy of "positive assertions" made by the United States. Id. at 953. The court summarily rejected the United States' attempt to exculpate itself by virtue of the "site inspection clauses," reasoning that such provisions do not shift the liability that flows from the United States' representations. Id.

Contango Operators, 9 F. Supp. 3d at 741-42. The court explained why Weeks Marine was not entitled to indemnity from the United States.

> Weeks Marine contends that under Michigan Wisconsin and Hollerbach v. United States, 233 U.S. 165, 49 Ct. Cl. 686, 34 S. Ct. 553, 58 L. Ed. 898 (1914), it was obligated to accept the government's representations in the dredging contract as true and therefore had no duty to Contango to consult updated charts prior to the date of the allision. Weeks Marine argues that it is therefore entitled to indemnity from the United States for any liability imposed on it because of its sole reliance on the contract. The court finds both Michigan Wisconsin and Hollerbach to be distinguishable from the facts of this case.
>
> . . .
>
> Weeks Marine argues . . . that under Michigan Wisconsin it was "obliged by the law to accept the [g]overnment's warranty regarding the number of pipelines as true." Weeks Marine points to the Supreme Court's language in Hollerbach that the government's representations "must be taken as true and binding upon the government," 34 S. Ct. at 556, to argue that it was obliged by law to accept the government's representations in the contract as true. The court does not interpret

-12-

> this language to mean that Weeks Marine was required to accept the contract specifications as true even when it had ready access to contrary and more recent information from the government. Cf. D.F.K. Enterprises, Inc. v. United States, 45 Fed. Cl. 280, 285 (Fed. Cl. 1999) ("Without some valid basis for a contrary conclusion (e.g., an absence of detrimental reliance by a government contractor, or a failure to investigate sources which would have revealed the truth), the government 'is liable for damage attributable to misstatements of fact (in a contract or specifications) which are representations made to the contractor.'" (quoting Summit Timber Co. v. U. S., 677 F.2d 852, 857[, 230 Ct. Cl. 434] (Ct. Cl. 1982))).
> [. . .] Important for purposes of applying Michigan Wisconsin to this case is the fact that in Michigan Wisconsin neither NOAA nor the Coast Guard had issued charts or announcements that identified the ruptured pipeline prior to the allision. Here, NOAA charts and LNMs identifying Contango's pipeline were readily available to Weeks Marine employees before the allision. The court has already concluded that given the significant damage that could result from striking a pipeline, the availability of current pipeline data, and the ease of accessing such data, it was unreasonable for Weeks Marine to rely solely on pipeline information provided earlier in the contract specifications.

Contango Operators, 9 F. Supp. 3d at 749-50.[16] The court again concludes that the holding of Michigan Wisconsin does not entitle Weeks Marine to indemnity against the United States.

Weeks Marine seeks to revive its argument for relief under Michigan Wisconsin by citing the Fifth Circuit's statement in the Underlying Litigation that "[i]f Weeks were maintaining a cross-claim against the government, the government would be liable if the specifications were a representation on which Weeks was justified in relying, and the specifications were a proximate cause of

---

[16] Id.

Contango's injury." Contango Operators, Inc. v. Weeks Marine, Inc., 613 F. App'x 281, 285 (5th Cir. 2015). Weeks Marine argues that this statement affirmatively establishes that it is entitled to recover from the United States the $5,900,897.55 it paid to Contango.[17]

The court is not persuaded by this argument. First, the statement of the Fifth Circuit is dicta because it was not essential to the Fifth Circuit's holding. In fact, immediately following the statement on which Weeks Marine relies, the Fifth Circuit stated that "we have no occasion to consider that question, . . . ." Id. at 285.

Weeks Marine argues that its action against the United States meets all the requirements of Michigan Wisconsin because the Corps' omission was a positive assertion, Weeks Marine justifiably relied on the positive assertion, and the absence of the pipeline in the contract was a proximate cause of Contango's injury. The court disagrees. The omission of the pipeline by the Corps may have been a positive assertion and was one cause of Contango's injury, but as the court previously held, Weeks Marine did not "justifiably" rely on it. Weeks Marine possessed information about the Contango pipeline that it could have used to avoid striking the pipeline. In the Underlying Litigation the court held, and the Fifth Circuit

---

[17]Plaintiff's Memorandum In Support of MSJ, Docket Entry No. 19-1, p. 14.

-14-

affirmed, that "it was unreasonable for Weeks Marine to rely solely on pipeline information provided earlier by the Corps in the contract specifications and dredging contract . . . ."[18] Contango Operators, 9 F. Supp. 3d at 745. The court held that "regardless of whether the Corps' practice of identifying pipelines constituted a 'prolonged course of conduct,' see Michigan Wisconsin, 551 F.2d at 951, Weeks Marine's sole reliance on information provided by the Corps did not satisfy its duty in this case to exercise reasonable care in its dredging operations."[19] Contango Operators, 9 F. Supp. 3d at 745.[20] The holding of Michigan Wisconsin does not entitle Weeks Marine to summary judgment against the United States.

B. **The United States' Motion for Summary Judgment**

The United States argues that indemnification is not available under the contract between Weeks Marine and the United States[21] and

---

[18] Id. at 16.

[19] Id.

[20] Moreover, although the absence of the pipeline in the Corps' documents was a proximate cause of the damages caused by the Corps to Contango, Weeks Marine was liable to the Corps because its own negligence proximately caused damages to Contango apart from the Corps' negligence.

[21] See Memorandum of Law in Support of the United States of America's Motion for Summary Judgment, attachment 1 to Defendant's MSJ, Docket Entry No. 20-1, p. 7.

-15-

that under the contract Weeks Marine is responsible for its own negligence.[22]

Under maritime law one party may agree to indemnify the other, but "a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms." Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir. 1981). In United States v. Seckinger, 90 S. Ct. 880, 885 (1970), the Court held that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties."

The contract between Weeks Marine and the United States contains a provision entitled "Permits and Responsibilities," which states "[t]he Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence."[23] This is an express contractual undertaking that Weeks Marine will pay for its own negligence if that negligence causes damages to a third party. Weeks Marine is

---

[22]Id.

[23]Clause 52.236-7, Contract, Exhibit A, Defendant's MSJ, Docket Entry No. 20. This provision is nearly identical to the one at issue in Seckinger. See Seckinger, 90 S. Ct. at 881 (analyzing the provision in a fixed-price government construction contract that stated that the private contractor "shall be responsible for all damages to persons or property that occur as a result of his fault or negligence . . . .").

therefore precluded by its contract from recovering its portion of the judgment from the United States.

The court found Weeks Marine negligent and responsible for 40% of Contango's damages. The contract between Weeks Marine and the Corps therefore provides no basis for Weeks Marine's claim that it is entitled to indemnity from the United States for the damages caused to Contango by Weeks Marine's negligence. Nor has Weeks Marine identified any other rule of law that would entitle it to be indemnified by the United States. The United States' Motion for Summary Judgment will therefore be granted.

## IV. Conclusion and Order

For the foregoing reasons Plaintiff Weeks Marine, Inc.'s Motion for Summary Judgment (Docket Entry No. 19) is **DENIED**, and defendant The United States of America's Motion for Summary Judgment (Docket Entry No. 20) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 31st day of October, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE